# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH SUNDAY, JR. d/b/a SUNDAY TRUCKING, LLC, | CIVIL ACTION NO. 3:17-CV-00946 |
| Plaintiff, | (JUDGE CAPUTO) |
| v. | |
| BERKSHIRE HATHAWAY HOMESTATE INSURANCE COMPANY and NATIONAL LIABILITY & FIRE INSURANCE COMPANY, | |
| Defendants. | |

## MEMORANDUM

Presently before this Court is a Motion for Summary Judgment filed by Defendants Berkshire Hathaway Homestate Insurance Company ("BHHIC") and National Liability & Fire Insurance Company ("National Liability") (collectively "Defendants"). This Motion will be granted in part and denied in part. Judgment will be entered in favor of the Defendants on Count I because the National Liability policy was void *ab initio*. However, judgment will not be entered with respect to Count III because (1) BHHIC failed to provide adequate notice of cancellation and (2) there remains a genuine dispute of material fact about whether cancellation was appropriate under the Cancellation and Non-Renewal Endorsement to the BHHIC policy.

## I. Background

### A. Factual History

Plaintiff Joseph Sunday, Jr. ("Plaintiff") owns and operates a trucking company that hauls commercial trailers. In order to operate this business in Pennsylvania Plaintiff was required to possess commercial auto insurance. Between December of 2014 and August of 2015, Plaintiff attempted to secure commercial auto insurance from two insurance

providers: BHHIC and National Liability.

(1) <u>The BHHIC Policy</u>

On November 24, 2014, Plaintiff, through his agent, submitted an application for commercial auto insurance to BHHIC. (*DSMF*, Ex. B). This application listed Plaintiff's address as 427 Cortez Road, Lake Ariel, Pennsylvania. (*Id.*) BHHIC approved this application and provided commercial auto coverage for Plaintiff's Kenworth truck effective December 11, 2014. (*DSMF*, at ¶ 7.) The policy was scheduled to run for one year and end on December 11, 2015. (*Id.*)

The BHHIC policy contained an endorsement specifying the possible bases for cancellation. This endorsement, titled "Pennsylvania Changes-Cancellation and Non-Renewal," specifically provided:

> 3. Cancellation Of Policies In Effect For 60 Days Or More
>
> If this policy has been in effect for 60 days or more . . . we may cancel this policy only for one or more of the following reasons:
>
> . . .
>
> b. [The insured] failed to pay a premium when due, whether the premium is payable directly to [BHHIC] or our agents or indirectly under a premium finance plan or extension of credit, notice of cancellation will be mailed at least 15 days before the effective date of cancellation.
>
> c. A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

(*DSMF*, Ex. C at 44.) Additionally, this endorsement explained that any notice provided would be delivered to the insured's last known mailing address and would "state the specific reasons for cancellation." (*Id.*)

There is no question that Plaintiff routinely made untimely premium payments. In fact, on February 17, 2015, March 17, 2015, April 23, 2015, and May 22, 2015 BHHIC issued Notices of Cancellation to Plaintiff explaining that his policy was pending cancellation

2

due to the "nonpayment of premium." (*DSMF*, at ¶¶ 11, 14.) However, after receiving each of these notices, Plaintiff paid BHHIC the premium owed and the Notices of Cancellation were rescinded. (*DSMF*, at ¶¶ 12, 15.) In other words, none of these notices ultimately triggered cancellation in accord with Section 3(b) of the Cancellation and Non-Renewal Endorsement.

On June 4, 2015, BHHIC sent another Notice of Cancellation to Plaintiff. (*DSMF*, at ¶ 19.) But, this time, the notice did not inform Plaintiff he failed to pay his monthly premium. Instead, the notice detailed that cancellation was pending because "a condition, factor or loss experience material to insurability ha[d] changed substantially or become known during the policy term." (*DSMF*, at ¶ 20; Ex. J.) This Notice of Cancellation resulted from an audit of Plaintiff's policy that concluded Plaintiff was operating "an unscheduled power unit under [his] trucking authority." (*DSMF*, Ex. N; *see also DSMF*, Ex. J; Ex. K.) Put simply, following the audit, BHHIC had reason to believe that Plaintiff was operating equipment that was not insured by the BHHIC policy. As stated in the policy, Plaintiff was prohibited from operating such equipment.

The unscheduled power unit was identified by BHHIC upon review of the U.S. Department of Transportation Federal Motor Carrier Safety Administration's ("FMCSA") Safety and Fitness Electronic Records ("SAFER") System. (*DSMF*, Ex. N; Ex. J.) Plaintiff claims that the SAFER system erred when it reported his use of the unscheduled unit. As of July 16, 2015, Plaintiff was in the process of contacting FMCSA to correct its error. (*Id.*) Unfortunately, even if the error was corrected, BHHIC had indicated that it would not "reconsider the cancellation, or rewrite the policy." (*DSMF*, Ex. K.) So, Plaintiff was forced to look elsewhere for insurance.

On August 6, 2015, the BHHIC policy cancelled.[1] (*DSMF*, Ex. M.)

---

[1] Despite the Notice of Cancellation's omission of any statement related to Plaintiff's payment history, BHHIC continues to claim Plaintiff's policy was cancelled "[d]ue to the unscheduled inspections *and* poor payment history." (*DSMF*, Ex. K (emphasis added).)

3

(2) The Nation Liability Policy

On July 16, 2015, Plaintiff, through his agent, submitted an application for commercial auto insurance to National Liability. (*DSMF*, Ex. N.) National Liability issued Plaintiff a policy effective August 6, 2015. (*DSMF*, Ex. R.)

The National Liability policy was conditioned on the down payment of premium. National Liability made clear that if Plaintiff's financial institution did not honor his down payment for any reason, his policy would be void from inception or flat cancelled.[2] Such warning was contained in: (1) the Bind Request Confirmation provided to Plaintiff's agent; (2) a letter sent to Plaintiff on August 11, 2015; and (3) the National Liability policy itself. (*DSMF*, Ex. R; Ex. X, at 42; Ex. P at UW-2 075.)

Plaintiff provided his down payment to National Liability by check, written on his bank account, in the amount of $2,244.00. (*DSMF*, at ¶ 35.) Plaintiff's bank did not honor his down payment; the check he provided bounced. (*DSMF*, at ¶ 40.) Accordingly, National Liability cancelled the policy effective August 6, 2015.[3]

---

[2] While Plaintiff notes that the declaration page for the policy contains the phrase "NO FLAT CANCELLATIONS," the underwriter for the policy, Jackie Mattingly, explained that this was an "in-house notation that was added to reflect that the *insured* did not have the right to 'flat cancel'. . . ." (*DSMF*, Ex. Y at ¶ 9.) Further, she explained that this "notation in no way amended the policy provision that states, "if the initial premium payment is dishonored by the financial institution for any reason, this policy will be void from inception with no advance notice of cancellation required." (*DSMF*, Ex. Y at ¶ 10.)

[3] Plaintiff claims that he never received notice of the flat cancellation. (Plaintiff's Answer to DSMF ("*PSMF*"), at ¶ 40.) The record suggests otherwise. (*DSMF*, Ex. U.) On August 11, 2015 National Liability sent two letters to Plaintiff at 427 Cortez Road, Lake Ariel, Pennsylvania. (*DSMF*, Ex. U; Ex. R.) The first letter, which Plaintiff acknowledges he received, explained that his coverage was effective August 6, 2015 pending the down payment of premium. (*DSMF*, at ¶ 37; Ex. R.) Attached to this letter

4

(3) <u>Plaintiff's Loss and Claim</u>

On August 21, 2015, Plaintiff's Kenworth truck suffered a "total loss" due to a fire, which originated in the engine compartment and ultimately consumed the entire vehicle. (*DSMF*, at ¶ 46.) Immediately following this loss, Plaintiff reported the fire and submitted a claim to National Liability. (*DSMF*, at ¶ 47.) National Liability denied Plaintiff's claim explaining that there was no policy in effect at the time of the loss. (*DSMF*, at ¶ 48.)

**B. Procedural History**

Following the denial of his claim, Plaintiff filed the instant action in the Lackawanna County Court of Common Pleas alleging two claims against each Defendant. (*Doc*. 1.) First, Plaintiff claims, in Counts I and III, that the Defendants breached their contractual duties when they cancelled his insurance policies. (*Doc*. 1, Ex. A.) Second, in Counts II and IV, Plaintiff alleges the Defendants acted in bad faith. (*Id.*)

The Defendants removed this action on May 30, 2017 and filed their answers to the Complaint on June 6, 2017. (*Docs*. 1-3.)

After answering the Complaint, the Defendants moved to sever the breach of contract and bad faith causes of action. (*Doc*. 6.) This motion was granted as unopposed. (*Doc*. 10.) Thus, discovery and trial on the breach of contract causes of action (Counts I and III) have proceeded separately and will conclude before the commencement of any discovery or trial on the bad faith causes of action (Counts II and IV). (*Id.*)

On May 18, 2018, the Defendants filed a Motion for Summary Judgment with respect to the breach of contract causes of action. (*Doc*. 13.) This Motion has been fully briefed and is now ripe for review.

---

was a copy of the National Liability policy. (*DSMF*, at ¶ 39.) The second letter, which Plaintiff claims he did not receive, explains that the policy was flat cancelled. (*DSMF*, at ¶ 42; Ex. U.) Stated differently, the second letter informed him that his premium down payment was not honored by his bank.

5

## II. Legal Standard

**A.     Motion for Summary Judgment**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 247-48. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When considering whether there are genuine issues of material fact, the court is required to "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

In order to prevail on a motion for summary judgment, the non-moving party must show "specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing FED. R. CIV. P. 56(e)). Although the non-moving party's evidence may be either direct or circumstantial, and "need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III. Discussion

**A.**     **Defendant's Motion for Summary Judgment**

    (1)    <u>Count I: Breach of Contract Against Defendant National Liability</u>

The Defendants argue that Plaintiff's insurance policy with National Liability was *void ab initio*, or void from inception, and thus I should treat it as if it never existed. Specifically, Defendants believe the policy was void from inception because Plaintiff's

premium down payment was not honored by his bank; his check bounced. Plaintiff does not dispute that the check he provided for the premium down payment bounced. In fact, Plaintiff seems to admit that the National Liability policy was "void at inception due to the down payment check being returned" for insufficient funds. (*Doc.* 17, at 7.) Yet, Plaintiff contends that the policy should not have cancelled because he was not provided notice that the check bounced, and National Liability waived the "policy provision regarding cancellation for dishonored funds.[4]" (*Doc.* 17, at 13.) Insofar that Plaintiff acknowledges the policy was void from inception, he is correct.

In accord with Pennsylvania law, National Liability made clear that if Plaintiff's bank did not honor his down payment, the policy was void from inception. *See O'Brien v. Nationwide Mut. Ins. Co.*, 869 A.2d 254, 257 (Pa. Super. Ct. 1997) (explaining that an insurer may void an insured's policy *ab initio* when the insured does not provide a premium payment within the first 60-days of the policy's effective date). National Liability informed Plaintiff in three separate documents that "if the initial premium payment is dishonored by the financial institution for any reason, this policy will be void from inception with no advance notice of cancellation required." (*DSMF*, Ex. P at UW-2 075; Ex. R; Ex. X at 42.) Thus, there is no genuine dispute that Plaintiff knew the policy would be void from inception if his check bounced. And, again, there is no dispute that Plaintiff's check bounced. (*DSMF*, at ¶ 40.) Therefore, there is no question that based on the terms of the policy, and as permitted by Pennsylvania law, the policy was void from

---

[4] Plaintiff also argues that National Liability is estopped from cancelling the policy. This argument, however, is severely undeveloped. "What is freely asserted is freely dismissed without merit." *Stadler v. Abrams*, No. 13-2741, 2017 WL 4407929, at *5 (D.N.J. Oct. 4, 2017); *see also Scopelliti v. Traditional Home Health and Hospice,* No. 18-40, 2018 WL 1899294, at *5 (M.D. Pa. Apr. 20, 2018) (Caputo, J.) (citing *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp*., 119 F.3d 1070, 1076 n.6 (3d Cir. 1997)) (finding that a district court "is not required to consider arguments that have not been developed by the party advancing them."); *accord* M.D. PA. L.R. §§ 7.5, 7.8 (2018). Therefore, I will not consider whether the doctrine of equitable estoppel applies.

inception. *See O'Brien*, 869 A.2d at 257.

Nevertheless, Plaintiff seems to argue that cancellation was improper because Pennsylvania law always requires a notice of cancellation. This is incorrect. It is true that 40 P.S. § 991.2006 requires a notice of cancellation be sent to an insured prior to the cancellation of an auto insurance policy. But pursuant to 40 P.S. § 991.2002(c)(3), the notice requirements contained in 40 P.S. § 991.2006 do not apply to policies that have been in effect for less than 60 days. Plaintiff's National Liability policy was bound on August 6, 2015 and was cancelled five days later on August 11, 2015. (*DSMF*, Ex. R; Ex. U.) Additionally, the Cancellation and Non-Renewal Endorsement explicitly states that if Plaintiff's check were to bounce the policy would be "void from inception with *no advance notice of cancellation required*." (*DSMF*, Ex. X, at 42.) Therefore, Plaintiff's argument that he was owed notice is without merit.[5]

Plaintiff also argues that National Liability waived the "policy provision regarding cancellation for dishonored funds." (Doc. 17, at 13.) Plaintiff points to the declaration page of the National Liability policy, which states, "NO FLAT CANCELLATIONS." (*DSMF*, Ex. Z.) A flat cancellation is a term meaning the cancellation of an insurance policy effective the date it was issued. (*DSMF*, Ex. Y at ¶ 9.) However, the use of this term on the declaration page was added, in-house, by an insurance underwriter. (*DSMF*, Ex. Y at ¶¶ 5, 7.) This notation was made "to reflect that the insured[, Plaintiff,] did not have the right to 'flat cancel' . . . ." (*DSMF*, Ex. Y at .¶ 9) As explained by the policy's underwriter, "the above-referenced notation in no way amended the policy provision that states, 'if the initial premium payment is dishonored by the financial institution for any reason, this policy will be void from inception with no advance notice of cancellation required.'" (*DSMF*, Ex. Y at ¶ 10.) So, the suggestion that National Liability waived the

---

[5] Even though National Liability was not required to provide notice of cancellation, it did. On August 11, 2015, National Liability sent a notice to Plaintiff informing him that his policy was being cancelled effective August 6, 2015 at 1:41 pm, the exact time the policy was initially bound. (*DSMF*, Ex. U.)

policy provision regarding cancellation for dishonored funds because the phrase "no flat cancellations" appears on the policy's declaration page is also without merit.

Since Plaintiff's "initial premium payment [was] dishonored by [Plaintiff's] financial institution . . . [the National Liability] policy [was] void from inception." (*DSMF*, Ex. R (as modified).) Plaintiff's claims that he was owed notice of the cancellation and that National Liability waived the policy provision used to cancel the policy are inapposite. For these reasons, Defendants' Motion for Summary Judgment on Count I will be granted and judgment will be entered in their favor.

(2) Count III: Breach of Contract Against Defendant BHHIC

Next, the Defendants argue that their Motion for Summary Judgment should be granted because BHHIC had the right to cancel Plaintiff's insurance policy and cancellation occurred in accord with Pennsylvania law. Plaintiff disagrees and argues that no provision of the Cancellation and Non-Renewal Endorsement to the BHHIC Policy was satisfied to allow for cancellation.

Defendants claim BHHIC had two independent bases to cancel Plaintiff's insurance policy.

(I) *Untimely Payment of Premium*:

First, Defendants cite Section 3(b) of the Cancellation and Non-Renewal Endorsement to the BHHIC Policy. Section 3(b) permits cancellation when: "(1) the policy is in effect for more than 60 days; (2) the insured has failed to pay premium when due; and (3) the insured receives 15-days notice of the pending cancellation." (*Defs. Reply Brief*, *Doc.* 20 at 5; *DSMF* at ¶¶ 8-9.) It is undisputed that Plaintiff's policy had been in effect for more than 60 days. The policy went into effect on December 11, 2014 and was cancelled on August 6, 2015. (*DSMF*, at ¶ 7.) It is also undisputed that Plaintiff made numerous untimely premium payments. In fact, Plaintiff was sent a Notice of Cancellation on four separate occasions–that were ultimately rescinded–due to his untimely payment of premium. (*DSMF*, Ex. D.) Finally, Plaintiff received notice of the August 6, 2015 cancellation on June 4, 2015. (*DSMF*, Ex. J.)

10

While Section 3(b) seems to support the cancellation of Plaintiff's BHHIC Policy, the Notice of Cancellation sent to Plaintiff did not comport with Pennsylvania law or the terms of the Cancellation and Non-Renewal Endorsement. The law in Pennsylvania is clear: "[N]otice shall [s]tate the specific reason or reasons of the insurer for cancellation or refusal to renew." 40 P.S. § 991.2006(3). The Cancellation and Non-Renewal Endorsement contained in the BHHIC policy echos the same: "Notice of cancellation will state the specific reasons for cancellation." (*DSMF*, Ex. C at 44, ¶ 4.) Here, the June 4, 2015 Notice did not state that Plaintiff's policy was being cancelled because of his untimely premium payments.[6] (*DSMF*, Ex. J.) Rather, it stated that the sole reason for termination was that "a condition, factor or loss experience material to insurability ha[d] changed substantially or become known during the policy term." (*Id.*)

Defendants maintain, however, that BHHIC intended to cancel Plaintiff's policy because of his untimely premium payments. To that end, Defendants point to the findings of a BHHIC audit that concluded Plaintiff's policy should be cancelled "due to [] unscheduled inspections *and* [his] poor payment history." (*DSMF*, Ex. K (emphasis added).) So, BHHIC may have intended to cancel Plaintiff's policy because of his poor payment history, but the notice provided did not commit such intent to writing.

Because the June 4, 2015 Notice did not cite Plaintiff's untimely payment of premium as a reason for cancellation, the Notice is improper. Therefore, that Notice can not support cancellation for the untimely payment of premium in accord with Section 3(b) of the policy's Cancellation and Non-Renewal Endorsement.

        (ii)    *Operation of an Unscheduled Power Unit*:

Second, Defendants believe that Plaintiff violated Section 3(c) of the Cancellation and Non-Renewal Endorsement. That section provides for cancellation if: "(1) the policy

---

[6] Significantly, all prior notices of cancellation received by Plaintiff explicitly stated the reason for pending cancellation as "[n]onpayment of premium to company." (*DSMF*, Ex. D.) The June 4, 2015 Notice contains no equivalent statement.

11

is in effect for more than 60 days; (2) there existed . . . a condition material to insurability which became known during the policy period; and (3) the insured receives 60-days notice of the pending cancellation." (*Defs. Reply Brief*, Doc. 20 at 9; *see also DSMF*, Ex. C at 44.) Again, it is undisputed that the policy was in effect for more than 60 days. (*DSMF*, at ¶ 7.) There is also no question that Plaintiff received 60-days notice of the pending August 6, 2015 cancellation on June 4, 2015. But the parties dispute whether there existed a condition material to insurabililty to provide for cancellation.

Defendants claim that an audit of Plaintiff's policy conducted in May of 2015 uncovered that "an unscheduled power unit had been identified under [Plaintiff's] trucking authority on the U.S. Department of Transportation Federal Motor Carrier Safety Administration's ("FMCSA") Safety and Fitness Electronic Records ("SAFER") System." (*DSMF*, at Ex. F ¶ 20.) In layman's terms, BHHIC believed that Plaintiff was operating equipment not listed on the BHHIC policy. Plaintiff claims that an error in the SAFER System made it appear that he was operating uninsured equipment. (*PSMF*, at ¶¶ 20, 24.) He was not. Plaintiff claims that he contacted the FMCSA to have the error corrected prior to July 16, 2015. (*DSMF*, Ex. N; *PSMF*, ¶¶ 20, 24.) Plaintiff's policy was cancelled on August 6, 2015, which, according to Plaintiff, was after the SAFER system error was corrected.[7] If BHHIC would have checked the SAFER system prior to cancellation it would have concluded that cancellation was improper under Section 3(c) of the policy's Cancellation and Non-Renewal Endorsement.

Because there is a genuine dispute of material fact concerning whether Plaintiff was operating unscheduled equipment and whether the SAFER system was corrected

---

[7] It is unclear when the SAFER system was corrected. But viewing the evidence in the light most favorable to the Plaintiff, and following Defendant's admission that this was not a valid basis for cancellation at the July 24, 2015 hearing on this issue, I will proceed with this analysis accepting that the correction occurred prior to the date of cancellation because the evidence reflects that Plaintiff requested the correction weeks before the cancellation.

prior to cancellation, Defendants' Motion for Summary Judgment on Count III will be denied.

## IV. Conclusion

Defendants' Motion for Summary Judgment will be granted in part and denied in part. Judgment will be entered in favor of the Defendants and against the Plaintiff with respect to Count I of the Complaint. Plaintiff may proceed against BHHIC on Count III.

An appropriate order follows.

| | |
|---|---|
| July 30, 2018 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |